## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| IOT INNOVATIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>BH SECURITY, LLC d/b/a BRINKS HOME,<br><br>Defendant. | Civil Action No. 2:25-cv-00333<br><br>**<u>JURY TRIAL DEMANDED</u>** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff IoT Innovations LLC ("<u>IoT Innovations</u>" or "<u>Plaintiff</u>") files this complaint against BH Security, LLC d/b/a Brinks Home ("<u>Brinks Home</u>" or "<u>Defendant</u>") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## <u>NATURE OF THE ACTION</u>

1.    This is a patent infringement action against Defendant for infringement of the following United States Patents (the "<u>Asserted Patents</u>") issued by the United States Patent and Trademark Office ("<u>USPTO</u>"), copies of which are available as provided below:

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| A. | 7,246,173 | Method And Apparatus For Classifying IP Data | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7246173 |
| B. | 7,263,102 | Multi-Path Gateway Communications Device | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7263102 |
| C. | 7,274,761 | Device Synchronisation Over A Network | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7274761 |

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| D. | 7,280,830 | Automatic Registration Services Provided Through A Home Relationship Established Between A Device And A Local Area Network | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7280830 |
| E. | 7,394,798 | Push-To Talk Over Ad-Hoc Networks | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7394798 |
| F. | 7,408,872 | Modulation Of Signals For Transmission In Packets Via An Air Interface | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7408872 |
| G. | 7,526,762 | Network With Mobile Terminals As Browsers Having Wireless Access To The Internet And Method For Using Same | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7526762 |

2.    Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3.    Plaintiff is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4.    BH Security, LLC d/b/a Brinks Home is a corporation organized under the laws of the State of Delaware with its principal place of business located at 1990 Wittington Place, Dallas, Texas 75234.

5.    Brinks Home may be served through its registered agent for service, Corporation Service Company d/b/a CSC-Lawyers Inc. located at 211 E. 5th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

6.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1-5 as though fully set forth in their entirety.

7.    This is an action for infringement of a United States patent arising under 35 U.S.C. §§

271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.     Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9.     Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in this judicial District, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

10.    Specifically, Brinks Home intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

11.    Brinks Home maintains regular and established places of business in this District.

12.    Brinks Home offers products and services and conducts business in the Eastern District of Texas.  For example, and as depicted below, Brinks Home promotes, advertises, and provides its services within this District:

## Americans Announce Brinks Home as Official Home Security Partner

Elisa Schmitt
Oct 28, 2022

**Allen/Dallas, TX** – The Allen Americans Professional Hockey Club, 4-time league champions and affiliate of the NHL's Ottawa Senators, are proud to announce a new partnership with Brinks Home™. The agreement will make DFW-based Brinks Home the official home security partner of the Americans, and will include multiple fan-engagement benefits for Season Ticket Members throughout the season.

"We're thrilled to have Brinks Home as a partner moving forward," said Jeff Wodka, Americans Vice President of Sponsorship Sales. "We've been nothing but impressed with their cutting-edge products and services and we encourage all of our fans who are considering home security to reach out to Brinks Home."

As part of the agreement, Brinks Home will have multiple activations throughout the CUTX Event Center, including the all new Brinks Home™ Security Zone. The Brinks Home Security Zone will be the new name for the east side of the rink, the side that the Americans defend twice. Brinks Home will also have a presence at several Americans games, offering fans opportunities to win prizes and learn more about the benefits of their products and services.

**Exhibit 2**.

13.    In addition, to conduct this business, Brinks Home employs a number of individuals within this District, including but not limited to, corporate recruiters, account managers, security consultants, systems engineers, and technical support.  These individuals' employment with Brinks Home is conditioned upon and based on their residence and continued residence within the District to further the specific infringing business activities of Brinks Home within the District.

14.    On information and belief, Brinks Home also leases, owns, stores, services, and/or operates real and personal property including, but not limited to, vehicles and other equipment, and provides and funds office space and equipment, vehicles, and other equipment to its employees, exclusive and non-exclusive contractors, agents, and affiliates, within this District for the specific purposes of offering, provide, and/or support its infringing products and services

within this District.

15.     Brinks Home's business specifically depends on employees, exclusive and non-exclusive contractors, agents, and affiliates, etc., being physically present at places in the District, and Brinks Home affirmatively acted to make permanent operations within this District to service its customers.  *See In re: Cray Inc*., 871 F.3d 1355, 1365–66 (Fed. Cir. 2017) (citing *In re: Cordis Corp*., 769 F.2d 733, 736 (Fed. Cir. 1985)).  Brinks Home employs and contracts with those employees, exclusive and non-exclusive contractors, agents, and affiliates, etc., with the specific requirement that those individuals and entities maintain a presence in the District to service customers within the District.  *See, e.g.*, *IoT Innovations LLC v. Monitronics Int'l, Inc.*, No. 2:22-cv-0432-JRG-RSP, 2023 U.S. Dist. LEXIS 174400, at *12 (E.D. Tex. Sep. 10, 2023). At least through these employees, Brinks does its business in this District through a permanent and continuous presence.  *See In re: Cordis Corp*., 769 F.2d 733, 737 (Fed. Cir. 1985).

16.     Brinks Home ships and causes to be shipped into the District infringing products and materials instructing its customers to perform infringing activities to its employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within the District.

17.     Defendant commits acts of infringement from this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products.

## THE ACCUSED PRODUCTS

18.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

19.     Based upon public information, Brinks Home owns, operates, advertises, and/or controls the website https://brinkshome.com/ through which it advertises, sells, offers to sell,

provides and/or educates customers about their products and services.  *See* **Exhibit 1**.

20.    Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes its home security platform and systems.

21.    Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes its home alarm and/or security platform and systems, which includes, but is not limited to the Brinks Home products identified in **Exhibits A–G** (Evidence of Use Regarding Infringement of the Asserted Patents), and associated hardware, software and applications (the "Accused Products").

22.    Defendant also instructs its customers, agents, employees, and affiliates regarding how to use the Accused Products for home security and control.

23.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I.    INFRINGEMENT OF U.S. PATENT NO. 7,246,173

24.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

25.    The USPTO duly issued U.S. Patent No. 7,246,173 (hereinafter, the "'173 patent") on July 17, 2007, after full and fair examination of Application No. 09/834,918, which was filed on April 16, 2001.  *See* '173 patent at 1.

26.    IoT Innovations owns all substantial rights, interest, and title in and to the '173 patent, including the sole and exclusive right to prosecute this action and enforce the '173 patent against infringers and to collect damages for all relevant times.

27.    The claims of the '173 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include

inventive components that improve upon the function and operation of IP data classification systems and methods in packet switch networks.

28.    The written description of the '173 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

29.    Defendant has directly infringed one or more claims of the '173 patent by using, providing, supplying, or distributing the Accused Products.

30.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '173 patent, as detailed in **Exhibit A** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,246,173).

31.    For example, as detailed in **Exhibit A**, the installation and use of the Accused Products, including but not limited to Brinks Home IQ 2.0 Control Panels (e.g., Qolsys IQ Panel2), performs a method of classifying Internet Protocol (IP) data to be sent from a source apparatus to a destination apparatus in a packet switched network, said method comprising: receiving said data at a first node, the data comprising a header comprising a list of at least one intermediate node to be visited on a way to the destination apparatus; and classifying said data at said first node based on an entry in said header.

32.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '173 patent.

33.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant

alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

<strong>COUNT II.     INFRINGEMENT OF U.S. PATENT NO. 7,263,102</strong>

34.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

35.     The USPTO duly issued U.S. Patent No. 7,263,102 (hereinafter, the "'102 patent") on August 28, 2007 after full and fair examination of Application No. 10/306,848 which was filed on November 27, 2002. *See* '102 patent at 1. A Certificate of Correction was issued on January 1, 2013. *See id.* at 18.

36.     IoT Innovations owns all substantial rights, interest, and title in and to the '102 patent, including the sole and exclusive right to prosecute this action and enforce the '102 patent against infringers and to collect damages for all relevant times.

37.     The claims of the '102 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of virtual personalized network setting.

38.     The written description of the '102 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

39.     Defendant has directly infringed and continues to infringe one or more claims of the

'102 patent by using, providing, supplying, or distributing the Accused Products.

40.    Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '102 patent, as detailed in **Exhibit B** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,263,102).

41.    For example, as detailed in **Exhibit B**, the Accused Products, used by Defendant, provide a personal digital gateway, comprising: a database of personal digital gateway rule-based profiles for communicating data to a communications device selected from a plurality of communications devices, the rule-based profile categorizing the data as at least one of (1) data associated with an access agent, (2) data associated with a configuration agent, (3) data associated with a security agent, and (4) data associated with a management agent; a processor communicating with a memory device, the processor associating a personal digital gateway rule-based profile with the selected communications device; and a communications interface between the personal digital gateway and, the selected communications device, wherein the personal digital gateway enables communication of the data with each communications device of the plurality of communications devices, the plurality of communications devices comprising at least one of a wireless communications device, a mobile phone, a wireless phone, a WAP phone, an IP phone, a satellite phone, a computer, a modem, a pager, a digital music device, a digital recording device, a personal digital assistant, an interactive television, a digital signal processor, and a Global Positioning System device, and wherein the memory device is removable from the personal digital gateway.

42.    Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '102 patent by inducing others to directly infringe the '102 patent. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners,

or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '102 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '102 patent, including, for example, claim 1 of the '102 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '102 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '102 patent. Defendant's inducement is ongoing.

43.    Defendant has also indirectly infringed by contributing to the infringement of the '102 patent. Defendant has contributed to the direct infringement of the '102 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '102 patent, including, for example, claim 1 of the '102 patent. The special features constitute a material part of the invention of one or more of the claims of the '102 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

44.    Defendant had knowledge of the '102 patent at least as of the date when they were notified of the filing of this action.

45.    Furthermore, on information and belief, Defendant has a policy or practice of not

reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

46.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

47.     Defendant's direct infringement of one or more claims of the '102 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

48.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '102 patent.

49.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

50.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '102 patent. Defendant's actions have interfered with and will interfere with FCS's ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT III.       INFRINGEMENT OF U.S. PATENT NO. 7,274,761

51.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully

set forth in their entirety.

52.    The USPTO duly issued U.S. Patent No. 7,274,761 (hereinafter, the "'761 patent") on September 25, 2007, after full and fair examination of Application No. 09/885,130 which was filed on June 21, 2001. *See* '761 patent at 1.

53.    IoT Innovations owns all substantial rights, interest, and title in and to the '761 patent, including the sole and exclusive right to prosecute this action and enforce the '761 patent against infringers and to collect damages for all relevant times.

54.    The claims of the '761 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of real time clocks of separate devices by way of synchronization to a common time reference.

55.    The written description of the '761 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

56.    Defendant has directly infringed one or more claims of the '761 patent by using, providing, supplying, or distributing the Accused Products.

57.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '761 patent, as detailed in **Exhibit C** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,274,761).

58.    For example, as detailed in **Exhibit C**, Defendant, using the Accused Products, including but not limited to Brinks Home Hubs, Brinks Home IQ 2.0 Control Panels, and Brinks

Home App, provides a device comprising a controller for reading a real time clock at an identified instance of a common time reference having distinguishable instances, wherein the device is arranged to synchronise to the common time reference; and a transmitter for transmitting, in a network comprising the device and at least one receiver, an identification of the real time clock value for a first instance and an identification of the first instance.

59.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '761 patent.

60.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV.    INFRINGEMENT OF U.S. PATENT NO. 7,280,830

61.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

62.    The USPTO duly issued U.S. Patent No. 7,280,830 (hereinafter, the "'830 patent") on October 9, 2007 after full and fair examination of Application No. 10/859,735 which was filed on June 2, 2004.  *See* '830 patent at 1.

63.    IoT Innovations owns all substantial rights, interest, and title in and to the '830 patent, including the sole and exclusive right to prosecute this action and enforce the '830 patent against infringers and to collect damages for all relevant times.

64.    The claims of the '830 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include

inventive components that improve upon the function and operation of automatic registration of a new device through the establishment of a home relationship with a network server.

65.    The written description of the '830 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

66.    Defendant has directly infringed and continues to infringe one or more claims of the '830 patent by using, providing, supplying, or distributing the Accused Products.

67.    Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '830 patent, as detailed in **Exhibit D** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,280,830).

68.    For example, as detailed in **Exhibit D**, Defendant, using the Accused Products, performs a method for automatic registration of a new wireless device with a registration server, comprising: establishing a home relationship between the new wireless device and a network server, such that no additional configuration is required by a user of the new device to communicate over a network once the relationship is established, wherein establishing a home relationship includes, determining at the network server, that the wireless device is an owned device, wherein the owned device is previously known to the network server; automatically obtaining registration information for the new device; establishing a connection between a registration server and the network server; and sending the registration information from the network server to the registration server.

69.    Since at least the time of receiving the original complaint in this action, Defendant has

also indirectly infringed the '830 patent by inducing others to directly infringe the '830 patent. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '830 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '830 patent, including, for example, claim 1 of the '830 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '830 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '830 patent. Defendant's inducement is ongoing.

70.    Defendant has also indirectly infringed by contributing to the infringement of the '830 patent. Defendant has contributed to the direct infringement of the '830 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '830 patent, including, for example, claim 1 of the '830 patent. The special features constitute a material part of the invention of one or more of the claims of the '830 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

71.    Defendant had knowledge of the '830 patent at least as of the date when they were

notified of the filing of this action.

72.      Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

73.      Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

74.      Defendant's direct infringement of one or more claims of the '830 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

75.      IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '830 patent.

76.      IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

77.      IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '830 patent.  Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT V.        INFRINGEMENT OF U.S. PATENT NO. 7,394,798

78.      Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

79.      The United States Patent and Trademark Office ("USPTO") duly issued U.S. Patent No. 7,394,798 (the "'798 patent") on July 1, 2008, after full and fair examination of Application No. 10/962,694, which was filed on October 13, 2004.  *See* '798 patent at 1.

80.      IoT Innovations owns all substantial rights, interest, and title in and to the '798 patent, including the sole and exclusive right to prosecute this action and enforce the '798 patent against infringers and to collect damages for all relevant times.

81.      The claims of the '798 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve  communication between network nodes in a network by grouping and using direct connections to save network resources.

82.      The written description of the '798 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

83.      Defendant has directly infringed and continues to indirect infringe one or more claims of the '798 patent by using, providing, supplying, or distributing the Accused Products.

84.      Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, at least claim 16 of the '798 patent, as detailed in **Exhibit E** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,394,798).

85.     For example, as detailed in as detailed in **Exhibit E**, the installation and use of the Accused Products, including but not limited to Brinks Home Hubs and Brinks Home IQ 2.0 Control Panels, performs a method for controlling network system comprising temporarily forming a first group including a first plurality of network nodes, temporarily forming a second group including a second plurality of network nodes, sending and receiving information between the first group and the second group, wherein a first network node included in the first plurality of network nodes and the second plurality of network nodes sends and receives the information between the first group and the second group; wherein the information is sent and received using a direct contact via a radio connection between at least two network nodes of the first group and the second group.

86.     Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '798 patent by inducing others to directly infringe the '798 patent. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '798 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '798 patent, including, for example, claim 16 of the '798 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '798 patent and with the knowledge that the induced acts constitute infringement.

Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '798 patent. Defendant's inducement is ongoing.

87.    Defendant has also indirectly infringed by contributing to the infringement of the '798 patent. Defendant has contributed to the direct infringement of the '798 patent by its personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '798 patent, including, for example, claim 16 of the '798 patent. The special features constitute a material part of the invention of one or more of the claims of the '798 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

88.    Defendant had knowledge of the '798 patent at least as of the date when it was notified of the filing of this action.

89.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

90.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

91.    Defendant's direct infringement of one or more claims of the '798 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

92.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '798 patent.

93.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

94.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '798 patent.  Defendant's actions have interfered with and will interfere with Plaintiff's ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT VI.        INFRINGEMENT OF U.S. PATENT NO. 7,408,872

95.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

96.     The USPTO duly issued U.S. Patent No. 7,408,872 (hereinafter, the "'872 patent") on August 5, 2008, after full and fair examination of Application No. 10/483,367, which was filed on July 9, 2001.  *See* '872 patent at 1.

97.     IoT Innovations owns all substantial rights, interest, and title in and to the '872 patent, including the sole and exclusive right to prosecute this action and enforce the '872 patent against infringers and to collect damages for all relevant times.

98.     The claims of the '872 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of signal modulation.

99.    The written description of the '872 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

100.    Defendant has directly infringed one or more claims of the '872 patent by using, providing, supplying, or distributing the Accused Products.

101.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '872 patent, as detailed in **Exhibit F** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,408,872).

102.    For example, as detailed in **Exhibit F**, the installation and use of the Accused Products, including but not limited to, the Brinks Home Hubs, Brinks Home IQ 2.0 Control Panels, the Brinks Home App, and associated software and hardware, perform a method for modulating signals, wherein signals are to be transmitted by a device in packets via an air interface, the method comprising: receiving a first plurality of bits and a second plurality of bits, creating a pair of bits by adding a set bit to a first bit of said first plurality of bits, wherein one of said set bit and said first bit of said first plurality of bits has a fixed value, and mapping one of a first set of values to said pair of bits according to a selected modulation scheme and mapping a second set of values to said second plurality of bits according to said selected modulation scheme.

103.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '872 patent.

104.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant

alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VII.     INFRINGEMENT OF U.S. PATENT NO. 7,526,762

105.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

106.     The USPTO duly issued U.S. Patent No. 7,526,762 (hereinafter, the "'762 patent") on April 28, 2009, after full and fair examination of Application No. 09/659,416, which was filed on September 11, 2000.  *See* '762 patent at 1.

107.     IoT Innovations owns all substantial rights, interest, and title in and to the '762 patent, including the sole and exclusive right to prosecute this action and enforce the '762 patent against infringers and to collect damages for all relevant times.

108.     The claims of the '762 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, distribution, and security of information management services on terminals by communication sessions with servers.

109.     The written description of the '762 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

110.     Defendant has directly infringed one or more claims of the '762 patent by using,

providing, supplying, or distributing the Accused Products.

111.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 7 of the '762 patent, as detailed in **Exhibit G** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,526,762).

112.    For example, as detailed in **Exhibit G**, the installation and use of the Accused Products, including but not limited to Brinks Home Hubs, Brinks Home IQ 2.0 Control Panels, and Brinks Home App, provides a system comprising a configuration server unit for receiving a configuration upgrade message from a source of an at least partial software upgrade, for identifying a plurality of users requiring the at least partial software upgrade and for thereafter providing the at least partial software upgrade to respective terminal servers associated with the plurality of users identified to require the at least partial software upgrade for subsequent distribution by the terminal servers to respective terminals of users identified to require the at least partial software upgrade, the configuration server unit being further configured to identify any terminal servers, following the provision of the at least partial software upgrade, to which the at least partial software upgrade has not yet been transferred and to determine, in response to activation of a terminal associated with a terminal server, if the terminal server has been identified as a terminal server to which the at least partial software upgrade has not yet been transferred and, if so, provide the at least partial software upgrade to the terminal server, wherein said configuration server unit comprises a database for saving upgrade information provided by the source of the at least partial software upgrade and for associating the saved upgrade information with the source of the at least partial software upgrade.

113.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one

or more claims of the '762 patent.

114.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

115.    IoT Innovations hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

116.    IoT Innovations requests that the Court find in its favor and against Defendant, and that the Court grant IoT Innovations the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '102 patent, the '830 patent, and the '798 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of those patents by such entities;

c. Judgment that Defendant accounts for and pays to IoT Innovations all damages to and costs incurred by IoT Innovations because of Defendant's infringing activities and other conduct complained of herein;

d. Judgment that Defendant's infringements be found willful as to the '102 patent, the '830 patent, and the '798 patent, and that the Court award treble damages for the period

of such willful infringement pursuant to 35 U.S.C. § 284;

e.   Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.   That this Court declare this an exceptional case and award IoT Innovations its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>April 2, 2025</u>                    Respectfully submitted,

By: <u>*/s/ C. Matthew Rozier*</u>

C. Matthew Rozier (CO 46854)
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305, (202) 316-1591
Email: matt@rhmtrial.com

Jonathan Hardt (TX 24039906)
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088)
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

*Attorneys for Plaintiff **IOT INNOVATIONS LLC***

*Admitted to the Eastern District of Texas

## List of Supportive Links

1. U.S. Patent No. 7,246,173, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7246173.
2. U.S. Patent No. 7,263,102, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7263102.
3. U.S. Patent No. 7,274,761, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7274761.
4. U.S. Patent No. 7,280,830, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7280830.
5. U.S. Patent No. 7,394,798, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7394798.
6. U.S. Patent No. 7,408,872, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7408872.
7. U.S. Patent No. 7,526,762, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7526762.

**List of Exhibits**

1. Exhibit 1:   Webpage: Brinks Home
2. Exhibit 2:   Webpage: Americans Announce Brinks Home as Official Home Security Partner
A. Exhibit A:   Evidence of Use Regarding Infringement of U.S. Patent No. 7,246,173
B. Exhibit B:   Evidence of Use Regarding Infringement of U.S. Patent No. 7,263,102
C. Exhibit C:   Evidence of Use Regarding Infringement of U.S. Patent No. 7,274,761
D. Exhibit D:   Evidence of Use Regarding Infringement of U.S. Patent No. 7,280,830
E. Exhibit E:   Evidence of Use Regarding Infringement of U.S. Patent No. 7,394,798
F. Exhibit F:   Evidence of Use Regarding Infringement of U.S. Patent No. 7,408,872
G. Exhibit G:   Evidence of Use Regarding Infringement of U.S. Patent No. 7,526,762